**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 18-cr-00501-RBJ-3

UNITED STATES OF AMERICA,

    Plaintiff,

v.

3. DEON MCELRATHBEY,

    Defendant.

---

## GOVERNMENT'S SENTENCING STATEMENT

---

The United States of America, by and through Valeria Spencer, Assistant United States Attorney, respectfully submits the following sentencing memorandum.

For the reasons set forth below, a sentence of 63 months, a variance from the guideline range of 77-96 months is the appropriate sentence that is sufficient, but not greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a).

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 24, 2018, Defendant was indicted on one count of assault resulting in serious bodily injury and aiding and abetting in such crime 18 U.S.C. § 113(a)(6) and § 2 and one count of assault with a dangerous weapon and aiding and abetting such crime, a violation of 18 U.S.C. § 113(a)(3) and § 2. [Doc. 1]   On January 9, 2020, Defendant pleaded guilty to Count 2 of the Indictment pursuant to the Plea Agreement.  [Doc

117] The instant offense occurred while Defendant was serving a sentence of 120 months imprisonment for Interference with Commerce by Threats or Violence from the District of Arizona. Presentence Investigation Report (PSR) at ¶ 35. Defendant finished that sentence on October 11, 2019.

A sentencing hearing is scheduled for May 18, 2020, at 1:30 p.m.

## II.   ARGUMENT

### A. Evaluation of 3553(a) Factors

#### 1.   The Nature and Circumstances of the Offense

On June 7, 2018, Defendant participated in an assault on another inmate who was stabbed repeatedly with a homemade weapon, a sharpened instrument known as a shank. As a result of the surprise attack of three inmates on one, the victim suffered multiple injuries to the head. The assault was captured on videotape footage which has previously been provided to the Court in both co-defendants' sentencing hearings.[1] While Mr. McElrathbey was not the instigator of the attack, he was an important player in making the fight last longer and ensuring the injuries were more brutal than they would have been if the fight had been one man against another.

---

[1] What was also caught on other videotape is the three defendants planning the attack. The attack occurred at 9:12 am. At 9:05, codefendants Jones (the instigator) and McElrathbey are seen outside of the Norwood Alpha and Bravo units together talking. The two then enter Alpha unit, and go into McElrathbey's cell. A minute later they exit the cell and head to Lee's cell in the same unit. Jones goes into Lee's cell while McElrathbey waits outside of it. Lee then enters the cell. Jones comes out shortly thereafter and heads to the front door of the unit. McElrathbey then follows Jones out of the unit, followed by Lee a few seconds later. Jones enters Bravo Unit. (Lee and McElrathbey do not live in the same unit as Jones and Morris. Inmates should not be in other units then their own.) Exhibit 2 shows the fight: Jones stops by his cell, then calls Morris over and immediately begins assaulting him. McElrathbey joins in forcefully and then Lee runs in and begins kicking at Morris. Morris was in a group class when Jones called him over. When the guards are alerted to the attack, McElrathbey and Lee can be seen slipping away unnoticed where they return to their own Unit.

Given Mr. McElrathbey's role in assuring Mr. Morris had no "fighting chance" to get away from the attack, Mr. McElrathbey's involvement in this criminal act demands a 63-month sentence.

The instant offense of agreeing with his confederates to join in a group attack on one inmate is a very serious matter. Any prison setting can be extremely volatile. The safety and security of both correctional staff and inmates are in jeopardy each time an inmate is in possession of a weapon and uses it in an attack. Defendant's participation in this assault, his willingness purposely to attack another inmate and his willingness to go along in aiding and abetting such an attack needs to be addressed through a serious sentence. Furthermore, an inmate attempted to come up the stairs to come to the defense of victim Morris, and was pushed down the stairs and injured. The list of those put in harm's way by Defendant's deliberately associating himself with the plan to attack another inmate grows.

In his Sentencing Statement Defendant states that his culpability is "equal to co-defendant Lee, who received a 30-month sentence" from this Court. [Doc. 156 at 5]. McElrathbey's culpability was not equal to Lee's. McElrathbey planned the assault with Jones and ran to the attack once Jones started stabbing victim Morris. McElrathbey grabbed Morris around the torso and threw him to the ground. McElrathbey then started assaulting Morris while Jones stabbed Morris. Once Morris was on the ground and being stabbed and hit by Jones and McElrathbey, Lee can be

seen on the footage coming in and kicking Morris.  The behavior between the two is not co-equal.

For all of these reasons, Defendant's criminal conduct justifies a 63-month prison term to reflect the seriousness of his offense.

### 2. The History and Characteristics of Defendant

At the young age of 34, Defendant has managed to accrue enough criminal history points to be a criminal history category V.  The types of crimes he committed earn him the title of career offender; ele     vating him to a criminal history category VI.  While numerous filings have covered the career offender status of this defendant, the erroneous statements and arguments he made in his Sentencing Statement must be addressed here.  Put simply, Mr. McElrathbey is a career offender because his Arizona attempted aggravated assault conviction constitutes a crime of violence.

The Defendant misstates the government's position as to the classification of his prior conviction.  *See* Sentencing Statement [Doc. 156] at 2 ("[T]he government argues that the charge was actually a Class 3 felony.").  It is undisputed that Mr. McElrathbey was convicted of a **Class 4** felony.  The parties simply dispute the import of that felony classification.

Defendant continues to insist that Arizona Statute § 13-1204(B) "is the only Class 4 felony to which the plea applies." Sentencing Statement at 2.  Yet none of the *Shepard* documents support that interpretation.  Nowhere in the indictment, plea

agreement, or plea colloquy is there any suggestion that Mr. McElrathbey placed another in reasonable apprehension of imminent harm by "imped[ing] the normal breathing or circulation of blood of another person" in the domestic violence context. Ariz. Stat. § 13-1204(B)(1), (2).  To the contrary, both the indictment and plea colloquy state that Mr. McElrathbey placed another in reasonable apprehension of imminent harm "by brandishing a weapon – a gun." Sent. Tr. [Doc. 148-1] at 9; *see also* Indictment [Doc. 148-3] at 3.  The *Shepard* documents thus track the language of Ariz. Stat. § 13-1204(A)(2) (hereafter, "subsection (A)(2)").  And while a *direct* violation of subsection (A)(2) is a Class 3 felony, an *attempt* to violate subsection (A)(2) is a **Class 4** felony.  *See* Ariz. Stat. § 13-1001(C)(3).

      Defendant observes that the Plea Agreement designates Mr. McElrathbey's conviction as "Non Dangerous—Non Repetitive." Sentencing Statement at 2.  That has no bearing on the instant analysis.  As the Tenth Circuit has recognized, Arizona law provides for a sentencing enhancement applicable where there is an allegation of "dangerousness." *United States v. Antonio-Agusta*, 672 F.3d 1209, 1214 (10th. Cir. 2012) (citing Ariz. Stat. § 13-604(P)).  In an effort to promote non-trial dispositions, the state commonly dismisses allegations of dangerousness in negotiated plea agreements. The Arizona Court of Appeals has recognized that dismissing such an allegation "serve[s] merely to remove the possibility of an enhanced sentence under § 13-604(P) but [does] not affect the charged offense" in any other manner.  *Montero v. Foreman*, 64 P.3d 206, 209 (Ariz. Ct. App. 2003) (noting that a crime can be "violent" for purposes of an Arizona sentencing provision even though the "dangerousness" designation is

dropped pursuant to a plea agreement); *see also Antonio-Agusta*, 672 F.3d at 1215–16. Here, the "Non-Dangerous—Non Repetitive" designation in the plea agreement served only to amend the indictment's allegation of dangerousness, and does not impact the crime-of-violence analysis.

McElrathbey further argues that crimes with a *mens rea* of recklessness categorically cannot constitute crimes of violence. Sentencing Statement at 3. But Mr. McElrathbey's attempted aggravated assault conviction involved no reckless behavior. Indeed, Mr. McElrathbey "could not have been convicted of reckless behavior because attempt is a specific intent crime and by definition includes *intentional* conduct." *State v. Kiles*, 175 Ariz. 358, 370 (1993) (emphasis in original). While *completed* aggravated assault under Arizona law may encompass multiple different mental states, *attempted* aggravated assault covers only intentional conduct. *See United States v. Gomez-Hernandez*, 680 F.3d 1171, 1176 (9th Cir. 2012).

But even assuming Mr. McElrathbey's prior conviction involved a *mens rea* of recklessness (which it did not), this would still not preclude a finding that the conviction constitutes a crime of violence. The Tenth Circuit could hardly have made itself clearer on this point:

> This court in *Bettcher* held that *Voisine* 'overrides our contrary precedents classifying reckless harm with negligent or accidental harm.' We concluded that 'after *Voisine*, the law is sufficiently plain that <u>reckless [crimes] qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(1)</u>.'

*United States v. Ash*, 917 F.3d 1238, 1246 (quoting *United States v. Bettcher*, 911 F.3d 1040, 1045, 1047 (10th Cir. 2018)) (emphasis added). Indeed, the Tenth Circuit has

expressly stated that the cases upon which Defendant relies—for example, *United States v. Duran*, 696 F.3d 1089 (10th Cir. 2012) (cited on pp. 3–4 of Def.'s Sent. Stmt.) and *United States v. Zuniga-Soto*, 527 F.3d 1110 (10th Cir. 2008) (cited on p. 3 of Def.'s Sent. Stmt.)—**have been overruled**. *See Bettcher*, 911 F.3d at 1047 ("Simply put, our reasoning in *Zuniga-Soto* and *Duran* has lost viability after *Voisine*."); *United States v. Ash*, 917 F.3d at 1245–46 ("[O]ur circuit has now recognized this line of cases [including *Duran* and *Zuniga-Soto*] has been overruled by intervening Supreme Court authority.").

Finally, Defendant attempts to escape a career offender finding by invoking the rule of lenity, which applies only where "a grievous ambiguity or uncertainty in the statute" leaves the court simply to guess as to what Congress intended. *Bettcher*, 911 F.3d at 1047 (internal quotation marks and citation omitted). But the Tenth Circuit previously rejected this same argument. In its view, "after *Voisine*, the law is sufficiently plain that reckless assaults qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(1)" such that the rule of lenity is inapposite. *Bettcher*, 911 F.3d at 1047.

Defendant is a career offender, making the total offense level 21 with a criminal history category of VI, giving him a guideline range of 77-96 months.

Defendant joined a gang at 13; he never graduated from high school, nor obtained his GED. While he had a childhood that included parents who were incarcerated, he also had the love and support of his grandmother, who raised him when Defendant's parents could not. He continues to have family support. Unfortunately, Defendant's criminal history began when he was 18 years old and continued through June 2018 with the instant offense. Defendant has a violent past and

does not seem to have done anything to overcome it.  He clearly has anger issues and has not chosen to address those either.

### 3. Reflecting the Seriousness of the Offense; Promoting Respect for the Law; Providing Just Punishment; Deterring Crime; Protecting the Public

A 63-month sentence, a full 14 months below the applicable guideline sentence would reflect the seriousness of the offense and McElrathbey's role in perpetrating it. The sentencing range applicable in this case reflects already that the Defendant was not the instigator nor main perpetrator in the attack.  He was a facilitator whose behavior falls in between that of Lee on the low end and Jones on the higher end of culpability.  By throwing Mr. Morris to the ground, he assured that others could not intervene, and that Inmate Jones could continue to inflict lasting bodily injury on Mr. Morris without Mr. Morris being able to protect himself or rely on the aid of others.  Both co-defendants received guideline sentences:  Jones received a 57-month sentence and Lee a 30-month sentence.  Neither co-defendant was a career offender like McElrathbey, whose guideline range is 77-96 months.

As indicated above, such a sentence is also necessary to attempt to deter Defendant from engaging in further criminal conduct.  More important than the individual deterrent effect a 63-month sentence would have in this case, other inmates who are currently engaged in or are contemplating comparable criminal conduct will likely be deterred by Defendant's sentence.

Furthermore, as Defendant is a very real danger to the community due to the recency of his violent conduct, this sentence would protect the public from further crimes of Defendant. He has been violent out of custody and violent while in custody. Accordingly, a 63-month sentence is necessary to send a clear message that all incidents involving the assault on others always has been illegal and dangerous and will be punished as such.

### III.    CONCLUSION

WHEREFORE, the government respectfully requests that the Court impose a sentence of 63 months imprisonment, a variant sentence 14 months below the bottom of the applicable guideline range of 77-96 months. This sentence will be sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a). The government asks the Court to impose the special conditions of supervised release requested in the PSR for a period of three years.

Dated this 14th day of May, 2020.

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:   s/Valeria Spencer
VALERIA SPENCER
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO  80202
Telephone:  303-454-0100
Fax:  303-454-0401
E-mail:  valeria.spencer@usdoj.gov
Attorney for the Government

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May 2020, I electronically filed the foregoing **GOVERNMENT'S SENTENCING STATEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

*s/Valeria N. Spencer*
VALERIA N. SPENCER
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0401
E-mail:  Valeria.Spencer@usdoj.gov